UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DIANE PARRISH,

        Plaintiff,

vs.                                Case No.  3:05-cv-597-J-32MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration,

        Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying the continuation of her Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, it is recommended the Commissioner's decision be **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on January 8, 1991. (Tr. 83).  On November 18, 1991, an Administrative Law Judge ("ALJ") determined Plaintiff was disabled as of November 19, 1990.  (Tr.154-61).  On August 18, 1995, the Social Security Administration notified Plaintiff that it found her disability ceased as of August 1995.  (Tr. 170-72).  Plaintiff requested a

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

reconsideration of this decision, however, it was upheld upon reconsideration.  (Tr.173).

Plaintiff then requested and received a hearing before a second ALJ on February 20,

1997.  (Tr. 201, 35-82).  On August 25, 1997, the second ALJ issued a decision finding

Plaintiff was no longer disabled.  (Tr. 9-19).  Plaintiff filed a Request for Review by the

Appeals Council, which was denied (Tr. 4-5) and Plaintiff sought judicial review.  Upon

the Commissioner's Motion for Entry of Judgment with Remand, the Court entered an

order of remand on February 1, 2001.  (Tr. 351-54).

On remand, another hearing was held before a third ALJ on August 8, 2002.  (Tr.

404-459).  This ALJ issued a decision on February 11, 2003, again finding Plaintiff's

disability had ceased as of August 1995.  (Tr. 335-49B).  On February 19, 2003, Plaintiff

filed a Request for Review by the Appeals Council.  (Tr. 330).  The Appeals Council

denied Plaintiff's request for review, thus making the ALJ's February 11, 2003 decision

the final decision of the Commissioner.  (Tr. 317-19).  Plaintiff timely filed her Complaint

in the U.S. District Court on June 29, 2005.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    <u>Basis of Claimed Disability</u>

Plaintiff was originally found to be disabled as of November 19, 1990 due to

synovitis of the left hip, cervical derangement, and lumbar derangement.  (Tr. 156-61).

In finding her disabled, the ALJ recommended Plaintiff's condition be re-evaluated in

twelve months to determine whether medical improvement had occurred.  (Tr. 159).  On

August 25, 1997, a second ALJ found Plaintiff's disability had ceased as of August 1,

1995.  (Tr. 9-19).  After a remand from the United States District Court, a third ALJ also

found Plaintiff's disability had ceased as of August 1, 1995.  (Tr. 335-49B).

### B.    <u>Summary of Evidence Before the ALJ</u>

Plaintiff was 49 years of age on the date of the hearing before the third ALJ.  (Tr. 408).  She has a high school education and one year of college.  <u>Id.</u>  Plaintiff has past relevant work experience as a corrections officer, school crossing guard and sales clerk.  Plaintiff's medical history is highlighted in the ALJ's decision and therefore, will not be repeated in full here.  However, by way of summary, the record indicates Plaintiff suffered a work-related injury in 1986 and a few days later was involved in a motor vehicle accident.  Plaintiff injured her left leg, hip and foot in the work-related injury and her lower back in the car accident.  On November 18, 1991, Administrative Law Judge, Joseph R. Faraguna, determined Plaintiff was entitled to a period of disability beginning on November 19, 1990 and to disability insurance benefits under Title II of the Social Security Act based on Plaintiff's synovitis of the left hip, cervical derangement and lumbar derangement.  (Tr. 160-61).  ALJ Faraguna recommended that Plaintiff be re-evaluated in 12 months to determine if there had been any medical improvement.  (Tr. 159).

The medical records indicate that after beginning to receive disability benefits, Plaintiff underwent an x-ray of her left hip and lumbosacral spine on November 2, 1994.  (Tr. 250).  The report revealed a normal lumbosacral spine and left hip.  <u>Id.</u>

On January 25, 1995, Plaintiff visited Richard K. Gaines, M.D. for an orthopaedic examination.  (Tr. 268).  Dr. Gaines noted that Plaintiff had unrestricted range of motion in her lumbar spine, hip, knee and ankle.  <u>Id.</u>  The x-ray of the lumbosacral spine revealed no "acute bony abnormality" or "significant degenerative changes."  <u>Id.</u>  Dr.

Gaines diagnosed "musculoligamentous strain, lumbar spine," prescribed a short course of physical therapy and directed Plaintiff to continue taking the medications from her primary care physician.  (Tr. 268-69).  Dr. Gaines did not anticipate Plaintiff needing any further orthopaedic intervention.  (Tr. 269).  On February 20, 1995, Plaintiff began physical therapy as prescribed.  (Tr. 251).  Plaintiff attended physical therapy March 3, 7, 9, 14, 16, 21, 23 and 28.  (Tr. 257-65).  On March 31, 1995, Plaintiff was a no call-no show.  (Tr. 257).  Plaintiff was again a no call-no show on April 4 and 6, 1995.  (Tr. 255-56).

On July 12, 1995, Plaintiff returned to Dr. Gaines for a follow-up visit.  (Tr. 267).  Dr. Gaines diagnosed Plaintiff with "chronic back pain with a 3/4" leg length inequality."  Id.  Dr. Gaines also noted that no further physical therapy was necessary as Plaintiff "has been unresponsive to these in the past."  Id.  Dr. Gaines stated that he did not find any neurological defects and had nothing further to offer her from an orthopaedic standpoint.  Id.  He prescribed a shoe lift for Plaintiff and encouraged Plaintiff to seek a neurological opinion for her chronic pain.  Id.

On August 15, 1995, Eric Puestow, M.D., a non-examining physician, completed a Physical Residual Functional Capacity ("RFC") Assessment on Plaintiff.  (Tr. 237-44).  Dr. Puestow determined Plaintiff was occasionally able to lift 20 pounds, frequently able to lift and/or carry 10 pounds; was able to stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday; sit (with normal breaks) for a total of 6 hours in an 8-hour workday and had no limitations on her ability to push or pull with her upper or lower extremities.  (Tr. 238).  Dr. Puestow also determined that Plaintiff was occasionally able to climb, balance, stoop, kneel, crouch and crawl.  (Tr. 239).

4

On February 2, 1996, Plaintiff underwent a consultative examination with Jose L. Ferrer, M.D.  (Tr. 270-73).  Dr. Ferrer noted that Plaintiff was able get in and out of her chair and on and off the examining table independently and without difficulty and used no assistive devices for ambulating.  (Tr. 271).  Plaintiff's left leg was one inch shorter than her right and the neurologic examination revealed that her lower extremities were within normal limits.  (Tr. 272).  Sensory testing was negative as were straight leg raising.  <u>Id.</u>  The x-rays showed "functional scoliosis with the apex to the right and no rotation in the lumbar spine."  <u>Id.</u>  No other abnormalities were observed.  <u>Id.</u>  Dr. Ferrer's diagnosis was:

> Lower back pain secondary to leg length discrepancy.  This patient should be treated with a shoe lift for balancing her pelvis and spine and conservative therapy for her symptoms of back pain.  She does need orthopaedic care for the rest of her life.  She should be able to performs [sic] job[s] which do not require heavy bending or lifting at the waist but at this point she is not totally incapacitated.

(Tr. 272-73).

On November 13, 1996, Plaintiff saw Dr. Gerald M. Gerling, M.D. for an initial neurological evaluation.  (Tr. 280-81).  Dr. Gerling diagnosed Plaintiff with chronic lumbalgia and a history of degenerative spondylosis of the lumbar spine.  (Tr. 280).  Upon examination, Dr. Gerling noted that Plaintiff's back was "perfectly supple" and that her straight leg raises were "completely negative."  <u>Id.</u>  Dr. Gerling prescribed physical therapy for Plaintiff.  <u>Id.</u>  Plaintiff attended physical therapy starting November 14, 1996.  (Tr. 307).  She also attended sessions on November 19, 22 and 25; December 2, 3, 6, 10, 11, 13, 17, 20, 24, 26 and 31 as well as January 2, 1997.  (Tr. 289-309).  Like before, Plaintiff failed to show up for three appointments without calling and her therapy

5

was discontinued effective January 16, 1997.  (Tr. 289).

Plaintiff returned to Dr. Gerling on November 26, 1996 stating that the physical therapy was helping.  (Tr. 282).  At that appointment, Dr. Gerling switched Plaintiff from Motrin, 800 mg a day to Feldene, 20 mg daily.  Id.  On January 6, 1997, Plaintiff again saw Dr. Gerling and reported that the physical therapy was no longer helping.  Id.  Dr. Gerling switched Plaintiff back to Motrin 800 mg a day.  Id.

At the hearing on August 8, 2002, Plaintiff testified she drove herself from St. Augustine to Gainesville, Florida.  (Tr. 409).  Plaintiff explained she was currently receiving a disability retirement pension from her former employer, the New York State Department of Corrections, and that she also received some workers compensation benefits.  (Tr. 414-15).  The ALJ noted that the record did not include any information regarding these benefits and Plaintiff's attorney offered to provide documentation showing Plaintiff's receipt of workers' compensation benefits, a copy of the statute for New York workers' compensation and information regarding the standards for a disability retirement for the City of New York, Department of Corrections.  (Tr. 417).

Plaintiff rated her daily pain at a nine and a half on a scale of one to ten.  (Tr. 424).  She claimed her pain lasted all day.  Id.  In order to obtain some relief, Plaintiff testified she must lay down constantly and she takes 800 milligrams of Motrin daily.  (Tr. 425).  Plaintiff claimed the Motrin did not help enough to enable her to sit up.  Id.  As for her daily routine, Plaintiff testified she did dishes, swept her house, was able to run a vacuum, did her laundry, cooked three-course meals, shopped for groceries, made her bed and took her daughter to and home from school.  (Tr. 427-436).

C.      **Summary of the ALJ's Decision**

In this case, the ALJ conducted a continuing disability review.  When a claimant

is found to be entitled to disability benefits, the Commissioner is required to conduct a

periodic review to determine whether those benefits should continue.  20 C.F.R. §

404.1594(a).  The Social Security regulations provide an eight-step sequential

evaluation process for determining if a claimant's disability continues.  See 20 C.F.R. §

404.1594(f).  First, the claimant must not be engaged in "substantial gainful activity."

Second, if the claimant's impairment meets or equals the severity of a listed impairment,

her disability continues.  If the impairment does not equal or meet the severity of a listed

impairment, the ALJ proceeds to the third step, to determine whether there has been

medical improvement of the claimant's condition since the comparison point decision

(the "CPD").  The CPD is the date of the most recent medical decision that the individual

was disabled or continued to be disabled.  Medical improvement is defined as "any

decrease in the medical severity of [the claimant's] impairment(s)."  20 C.F.R. §

404.1594(b)(1).

Fourth, if there has been medical improvement, the ALJ must then determine

whether that improvement is related to the ability to do work.  In order to determine

whether a medical improvement is related to the ability to work, the ALJ must compare

the claimant's abilities at the time of the CPD with her abilities now.  If there has not

been medical improvement or if the medical improvement is not related to the ability to

work, the ALJ proceeds to the fifth step to determine whether any exceptions listed in 20

C.F.R. § 404.1594(d) and (e) apply.  Sixth, if there has been medical improvement

related to the claimant's ability to work or if any of the exceptions mentioned above

7

exist, the ALJ must determine whether the claimant has a severe impairment or combination of impairments.  If the severe impairment does not equal or meet the severity of a listed impairment, the ALJ proceeds to the seventh step, to assess the claimant's residual functional capacity ("RFC") and determine whether the claimant can perform any of her past relevant work.  If so, the disability has ceased.  If not, the ALJ proceeds to step eight and will consider the claimant's RFC, age, education and past work experience to determine whether the claimant can perform other work.  See § 20 C.F.R. 404.1594(f)(1)-(8).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 19, 1990.  (Tr. 349).  At step two, the ALJ determined Plaintiff did not have "an impairment or a combination of impairments, that met or equaled the severity requirements of any listed impairment on August 1, 1995." (Tr. 333, 349).  At steps three and four, the ALJ noted that the CPD was November 18, 1991, "when Judge Faraguna issued a favorable decision."  (Tr. 340).  The ALJ determined that Plaintiff had experienced medical improvement since the CPD and that the medical improvement was related to Plaintiff's ability to work.  (Tr. 341-42, 349). Because the ALJ found medical improvement, he was not required to consider the exceptions at step five and instead, proceeded to step six where he found Plaintiff had the severe impairment of lower back pain due to leg length discrepancy.  (Tr. 342).

The ALJ next determined that as of August 1, 1995, Plaintiff retained the residual functional capacity for unskilled light and sedentary work.  (Tr. 344, 349).  In establishing Plaintiff's RFC, the ALJ found Plaintiff's testimony regarding her pain and ability to work not fully credible.  (Tr. 343-44, 349).  At step seven, the ALJ utilized the

8

testimony of a vocational expert (the "VE") and found Plaintiff was able to perform her past relevant work as a school crossing guard as that job is performed in the national economy.  (Tr. 345, 349A).  Accordingly, the ALJ found Plaintiff's disability had ceased as of August 1, 1995.  Despite this finding, the ALJ proceeded to step eight where he utilized both the testimony of the VE and the Medical-Vocational Guidelines contained in Appendix 2 to Subpart P of Regulations No. 4 (the "grids").  Based on Plaintiff's RFC and Plaintiff's exertional capacity for light and sedentary work, her age, education and work experience, the ALJ noted that Rules 201.28 and 202.21 of the grids directed a finding of not disabled.  (Tr. 346, 349A).  The ALJ further found that Plaintiff's non-exertional limitations, which restricted her to unskilled work, did not "significantly erode the work base [] available to her."  (Tr. 346).  Based on the testimony of the VE, the ALJ found Plaintiff capable of making a successful adjustment to other work and therefore, determined that as of August 1, 1995, Plaintiff was no longer disabled within the meaning of the Social Security Act.  (Tr. 347, 349A-B).

## III.   STANDARDS OF LAW

### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## IV.   ANALYSIS

Plaintiff argues three issues on appeal.  First, Plaintiff argues the ALJ erred in finding Plaintiff experienced medical improvement.  (Doc. 15, pp. 5-7).  Additionally, Plaintiff argues the ALJ committed error by improperly discrediting Plaintiff's complaints of pain.  (Doc. 15, pp. 7-8).  Finally, Plaintiff claims the ALJ failed to properly consider and give proper weight to her award of workers' compensation benefits by the state of New York.  The Commissioner responds that the ALJ properly found Plaintiff experienced medical improvement and was no longer disabled.  The Commissioner also argues the ALJ properly evaluated Plaintiff's credibility and was not obliged to consider Plaintiff's workers' compensation benefits as Plaintiff failed to provide the ALJ with any documentation regarding these benefits.  (Doc. 16).

**A.** **Whether the ALJ erred by finding Plaintiff experienced medical improvement sufficient to cease her benefits**

Plaintiff argues the ALJ erred in finding she experienced medical improvement. Specifically, Plaintiff claims the ALJ erred because the medical evidence shows that on February 2, 1996, Dr. Ferrer, a consultative doctor, examined Plaintiff and diagnosed her with "lower back pain secondary to leg length discrepancy" and recommended a shoe lift and conservative therapy for Plaintiff's symptoms of back pain.  (Doc. 15, p.6). Plaintiff argues that because Dr. Ferrer's diagnosis is "the same reason that Judge Faraguna awarded benefits in November 18, 1991," this somehow proves Plaintiff did not experience medical improvement.  (Doc. 15, p.6).

The Court notes that Plaintiff was awarded benefits as a result of her synovitis[2] of the left hip, cervical derangement[3] and lumbar derangement.  (Tr. 160).  Dr. Ferrer's diagnosis makes no mention of any synovitis or derangement.  Indeed, the x-rays taken by Dr. Ferrer noted no abnormalities of the spine except for "a functional scoliosis with the apex to the right and no rotation in the lumbar spine."  (Tr. 272).  The x-ray of the left hip revealed "slightly increased varus neck shaft ankle with no other abnormalities."  Id. Accordingly, Plaintiff's claim that Dr. Ferrer's diagnosis is the same as the basis for the November 1991 disability finding is without merit.  Additionally, Plaintiff does not point out that Dr. Ferrer's report specifically finds Plaintiff able to perform jobs which do not

---

[2] Synovitis is "inflammation of a synovial membrane. It is usually painful, particularly on motion, and is characterized by a fluctuating swelling due to effusion within a synovial sac." Dorland's Illustrated Medical Dictionary 1645 (28th ed. 1994).

[3] Derangement is defined as "disarrangement of a part or organ." Dorland's Illustrated Medical Dictionary 446 (28th ed. 1994).

require heavy bending or lifting at the waist.  (Tr. 272-73).  The Court finds the ALJ did

not err in determining Plaintiff experienced medical improvement.

**B.**      **Whether the ALJ erred by failing to properly evaluate Plaintiff's credibility**

Plaintiff also takes issue with the ALJ's analysis of Plaintiff's subjective

complaints regarding her limitations and pain.  Plaintiff testified her pain is a 9 and 1/2

out of ten and that she is unable to sit or stand for extended periods due to her pain.

(Tr. 424-26).  Plaintiff also testified she is unable to pick up anything heavier than a

gallon of milk or walk more than one city block.  (Tr. 438, 440).

Pain is a non-exertional impairment.  Foote, 67 F.3d at 1559.  The ALJ must

consider all of a claimant's statements about her symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent

with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the

medical signs and laboratory findings show medical impairments which reasonably

could be expected to produce the pain or other limitations alleged, the ALJ must apply

the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying
> medical condition and either (2) objective medical evidence
> that confirms the severity of the alleged pain arising from
> that condition or (3) that the objectively determined medical
> condition is of such a severity that it can be reasonably
> expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Once a claimant establishes through objective medical evidence that an underlying

medical condition exists that could reasonably be expected to produce pain, 20 C.F.R.

sections 404.1529 and 416.929 provide that the Commissioner must consider evidence

about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding the issue of disability.  Foote, 67 F.3d at 1561.  Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

In this case, the ALJ did not specifically reference the Eleventh Circuit pain standard, however, it appears he conducted the correct analysis for pain and subjective complaints.  Specifically, the ALJ found that Plaintiff's leg length discrepancy "could reasonably be expected to produce some limitations."  (Tr. 343).  As such, the ALJ was required to consider Plaintiff's subjective complaints of pain and other symptoms.  The ALJ did so and determined the medical evidence confirmed that Plaintiff's "complaints suggest a greater severity than can be shown by the objective medical evidence alone." Id.

When an ALJ decides not to credit a claimant's testimony about her subjective limitations or pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  Additionally, the Code of Federal Regulations sets forth seven factors that an ALJ should consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications used to alleviate pain or other symptoms; (5)

13

treatment other than medication, received for relief of pain or other symptoms; (6) any measures, other than treatment, used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling 96-7p.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

Here, the ALJ examined some of these factors and provided several reasons for his determination regarding Plaintiff's credibility.[4]  Initially, the ALJ opined that Plaintiff's credibility "is brought into question as she has pursued very little medical treatment." (Tr. 343).  The ALJ also noted that Plaintiff took pain medication but that there was no evidence of any complaints of side effects or medication inefficacy.  Id.  Additionally, the ALJ pointed to the shoe lift prescribed by Dr. Gaines and the lack of any evidence that Plaintiff suffered from complications as a result of the lift or was unable to use it.  Id. Despite this, Plaintiff was not wearing the lift when she appeared for the February 1996 examination with Dr. Ferrer.  Id.  The ALJ also noted that Plaintiff had been non-compliant with her medical treatment.  Specifically, the ALJ pointed to Plaintiff's failure to attend the physical therapy ordered by Dr. Gerling in November 1996.  Id.

Plaintiff primarily takes issue with the ALJ's reliance on Plaintiff's lack of medical treatment to discredit her testimony regarding subjective limitations and pain.  Plaintiff

---

[4] Although the ALJ does not discuss each of the seven factors, this is not error as the Eleventh Circuit does not require discussion of all seven factors explicitly.  French v. Massanari, 152 F.Supp.2d 1329, 1338, n.6 (M.D. Fla. 2001) (holding that "it is not reversible error that the administrative law judge did not expressly mention the side effects of [the plaintiff's] medications in his credibility determination"); Bechtold v. Massanari, 152 F.Supp.2d 1340, 1349, n.9 (M.D. Fla. 2001), aff'd, 31 Fed.Appx. 202 (11th Cir. 2001).

argues the ALJ was not permitted to base his credibility assessment of Plaintiff on

Plaintiff's failure to obtain medical treatment without first questioning her about it.  In

support of this argument, Plaintiff cites to Social Security Ruling 96-7, which holds in

pertinent part:

> In general, a longitudinal medical record demonstrating an
> individual's attempts to seek medical treatment for pain or
> other symptoms and to follow that treatment once it is
> prescribed lends support to an individual's allegations of
> intense and persistent pain or other symptoms for the
> purposes of judging the credibility of the individual's
> statements. . . .
>
> On the other hand, the individual's statements may be less
> credible if the level or frequency of treatment is inconsistent
> with the level of complaints, or if the medical reports or
> records show that the individual is not following the
> treatment as prescribed and there are no good reasons for
> this failure.  **However, the adjudicator must not draw any
> inferences about an individual's symptoms and their
> functional effects from a failure to seek or pursue
> regular medical treatment without first considering any
> explanations that the individual may provide, or other
> information in the case record, that may explain
> infrequent or irregular medical visits or failure to seek
> medical treatment.  The adjudicator may need to
> recontact the individual or question the individual at the
> administrative proceeding in order to determine whether
> there are good reasons the individual does not seek
> medical treatment or does not pursue treatment in a
> consistent manner.**  The explanations provided by the
> individual may provide insight into the individual's credibility.
> For example:
> * The individual's daily activities may be structured so as to
> minimize symptoms to a tolerable level or eliminate them
> entirely, avoiding physical or mental stressors that would
> exacerbate the symptoms.  The individual may be living with
> the symptoms, seeing a medical source only as needed for
> periodic evaluation and renewal of medications.
> * The individual's symptoms may not be severe enough to
> prompt the individual to seek ongoing medical attention or

may be relieved with over-the-counter medications.
* The individual may not take prescription medication
because the side effects are less tolerable than the
symptoms.
* The individual may be unable to afford treatment and may
not have access to free or low-cost medical services.
* The individual may have been advised by a medical source
that there is no further, effective treatment that can be
prescribed and undertaken that would benefit the individual.
* Medical treatment may be contrary to the teaching and
tenets of the individual's religion.

S.S.R. 96-7p (emphasis added).  In the present case, the ALJ did not question Plaintiff

at all about her failure to obtain medical treatment.  Instead, he simply asked Plaintiff

the last time she saw a physician and the last time she saw her back doctor.  (Tr. 451).

He did not follow-up and ask Plaintiff why she did not see the back doctor more often.

Instead, Plaintiff, on her own, explained that there was nothing further the doctor could

do for her.  Id.  The ALJ's decision does not make it clear whether he considered her

explanation that there was nothing else the doctors could do for her back or hip

problems.  At the very least, the ALJ should have asked Plaintiff directly why she had

not seen a doctor for her back and hip problems and then discussed those reasons in

his credibility assessment.

Additionally, the ALJ's reliance on the lack of evidence of side effects or

medication inefficacy to discredit Plaintiff's testimony is not supported by substantial

evidence.  The ALJ states that there was no evidence of any complaints of side effects

or medication inefficacy.  (Tr. 343).  However, the record reflects that Plaintiff was

prescribed pain medication and Plaintiff claimed that the medication simply made her

pain tolerable but did not resolve it.  (Tr. 307, 425).  There is also evidence that Plaintiff

attempted to change her medication from Motrin 800 mg to Feldene 20mg, but that was

16

not successful and she switched back to the Motrin 800 mg.  (Tr. 282).

The ALJ also relies on Plaintiff's failure to comply with medical treatment as a reason to discredit her subjective complaints.  Specifically, the ALJ points to Plaintiff's failure to wear her shoe lift to her appointment with Dr. Ferrar and her failure to regularly attend physical therapy.  Again, the ALJ did not ask Plaintiff why she failed to wear her shoe lift or why she did not regularly attend the physical therapy.  The records indicate that Plaintiff felt her shoe lift threw her off balance (Tr. 178), however, the ALJ makes no mention of this.

As for Plaintiff's failure to attend physical therapy, the records indeed show that Plaintiff did not attend all of her physical therapy sessions.  The records indicate Dr. Gaines prescribed physical therapy for a six week period in January 1995.  (Tr. 269). Plaintiff attended her first session at Halifax Medical Center on February 20, 1995.  (Tr. 251).  In addition to her first session, Plaintiff attended eight physical therapy sessions. (Tr. 258-65).  The session notes indicate Plaintiff experienced temporary improvement in her pain symptoms as a result of the therapy.  (Tr. 259-65).  Then on March 31, 1995, Plaintiff did not appear for her session and failed to call.  (Tr. 257).  Plaintiff did the same thing two more times and her therapy was accordingly, discontinued.  (Tr. 255-57).  Dr. Gaines's medical records show that on July 12, 1995, Dr. Gaines felt it unnecessary for Plaintiff to attend any further physical therapy sessions as "she has been unresponsive to these in the past."  (Tr. 267).

In November 1996, Dr. Gerling prescribed physical therapy for Plaintiff.  (Tr. 308).  The records indicate Plaintiff began physical therapy again on November 14, 1999.  She attended therapy sessions on November 14, 19, 22 and 25; December 2, 3,

6, 10, 11, 13, 17, 20, 24, 26 and 31 as well as January 2, 1997.  (Tr. 289-309).  The

notes show she was unable to attend her session on January 3 and was a no-show on

January 7, 1997.  (Tr. 294).  On January 10, 1997, the notes indicate that Plaintiff

"plateaued" and was discharged from any further physical therapy.  (Tr. 293).  The

Court agrees with the ALJ that the records support a finding that Plaintiff was not the

model patient in her attendance at physical therapy, however, there is evidence that the

physical therapy was no longer helping Plaintiff.  Moreover, before using her failure to

attend physical therapy as a basis for undermining her credibility, the ALJ should have

at least asked her why she did not continue with her therapy to determine whether she

had a good reason for discontinuing the therapy.  See SSR 96-7p.

        In sum, the reasons offered by the ALJ for discrediting Plaintiff's testimony, while

specific, are neither adequate nor supported by substantial evidence.  As such, the

Court will remand the case with instructions for the ALJ to re-evaluate Plaintiff's

credibility and to continue with his analysis of Plaintiff's disability.

**C.**     **Whether the ALJ erred by failing to consider Plaintiff's Workers'**
        **Compensation Award**

        Plaintiff also argues the ALJ erred by failing to give any weight to Plaintiff's

workers' compensation award.  (Doc. 15, p.8).  The Commissioner responds that it is

rather disingenuous of Plaintiff's counsel to argue it was error for the ALJ to consider

Plaintiff's workers' compensation award when the ALJ had no information about the

workers' compensation award.  (Doc. 16, p.12).  During the hearing, counsel for Plaintiff

mentioned the workers' compensation award and the ALJ pointed out that there was

nothing in the record regarding Plaintiff's award.  (Tr. 416-17).  Plaintiff's counsel offered

18

to provide documentation showing Plaintiff's receipt of workers' compensation benefits, a copy of the statute for New York workers' compensation and information regarding the standards for a disability retirement for the City of New York, Department of Corrections. (Tr. 417).  However, the record does not reveal that Plaintiff's counsel ever provided the information.

The Eleventh Circuit has held that "'[t]he findings of disability by another agency, although not binding on the Secretary, are entitled to great weight.'" Falcon v. Heckler, 732 F.2d 827, 831 (11ᵗʰ Cir. 1984) (quoting, Bloodsworth v. Heckler, 703 F.2d 1233, 1241 (11ᵗʰ Cir. 1983)).  The Court agrees with the Commissioner that it is rather disingenuous of Plaintiff's counsel to argue the ALJ erred in considering Plaintiff's workers' compensation award when counsel failed to provide him with any information regarding the award.  However, as this case is being remanded for further evaluation, the Court will direct the ALJ to obtain documentation regarding Plaintiff's award of workers' compensation benefits and consider that information in rendering his opinion.

## V.   CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Accordingly, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **REVERSED AND REMANDED**. On remand, the Commissioner should be directed to further evaluate the evidence with respect to Plaintiff's allegations of pain and other limitations.  The ALJ should also consider

Plaintiff's award of workers' compensation benefits and conduct any further proceedings deemed appropriate.

**DONE AND ENTERED** in Chambers at Jacksonville, Florida, this _11th_ day of July, 2006.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Honorable Timothy J. Corrigan,
        United States District Judge